IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED

01 APR 25 PM 4:33

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| WALTER OWENS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. CV-96-J-0440-E |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

ENTERED

APR 2 5 2001

**FINAL JUDGMENT AND ORDER APPROVING**

**SETTLEMENT OF MINORS' CLAIMS**

Most of the adult Plaintiffs in the above-captioned action and defendant Monsanto Company, as well as an affiliated non-party, Solutia, have entered into a Settlement Agreement, a copy of which is attached hereto, identified as Exhibit 1, and incorporated by reference. Plaintiffs and defendant Monsanto have filed a motion for approval of the settlement of the minors' claims. The motion came on for hearing before the Honorable Inge Johnson, Judge, U.S. District Court on April 25, 2001. Having reviewed the relevant pleadings, heard evidence during the trial of the case, heard and considered the statements of counsel and the Guardian Ad Litem appointed by the Court, and being fully advised of the premises, IT IS HEREBY

201

ORDERED, ADJUDGED AND DECREED:

1.     The proposed settlement of the claims of the minors is hereby approved as fair

and reasonable, including the payment of attorneys' fees and expenses as outlined

in the Settlement Agreement;

2.     Judgment shall be entered in favor of each minor child in the amounts set forth in

a schedule, consistent with the evidence presented at the hearing, to be submitted

by counsel within three weeks of the date of this Order, which amounts are net of

attorneys' fees and expenses;

3.     The Court further orders that the effect of this Order is that each minor completely

releases and forever discharges Monsanto Company and Solutia Inc., their past,

present, and future officers, directors, stockholders, attorneys, agents, servants,

representatives, employees, contractors, distributors, dealers, subsidiaries,

affiliates, insurance companies, partners, predecessors and successors in interest,

and assigns and all other persons, firms or corporations with whom any of the

former have been, are now or may hereafter be affiliated (referred to herein as the

"Released Parties") from any and all legal and equitable claims, whether currently

known or unknown, which each now has, or which he or she may hereafter

accrue, or otherwise acquire, as the result of any act or omission of the Released

Parties related to the operations or activities at the Monsanto Plant in Anniston,

Alabama prior to the date hereof, including any and all claims which are or could

have been asserted in this action.  In the event any payment required in paragraph

2 above is not made to a minor plaintiff, then this release is null and void as to

such plaintiff.

4.   The Court retains continuing jurisdiction of this matter for the purpose of

enforcing the Settlement Agreement and this Judgment, as permitted by *Bender v.*

*Allegra,* 130 F.3d 990 (11th Cir. 1997);

It is so ordered this 25th day of April, 2001.

Inge Johnson, Judge

U.S. District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER OWENS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. CV-96-J-0440-E |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into this _____ day of April, 2001, by and between the aggregated plaintiffs and each individual plaintiff ("Plaintiffs") in the above-captioned action, by and through their counsel of record, and Defendant Monsanto Company ("Monsanto") and Solutia Inc. ("Solutia") (sometimes hereafter referred to collectively as "Monsanto/Solutia"), by and through their authorized representatives and counsel.

WHEREAS, Plaintiffs filed the above-captioned action against Monsanto for personal injuries, emotional distress, medical expenses, and property damage purported to arise out of the alleged discharge and release of PCBs and other chemicals or substances by Monsanto from the Anniston, Alabama facility formerly owned and operated by Monsanto.

WHEREAS, although Solutia was not a named defendant in the action, the Anniston facility now is, and has been for some time, owned and operated by Solutia, and Plaintiffs make claims for alleged continuing discharges and releases of PCBs and other chemicals or substances from the

Anniston facility against Solutia.

WHEREAS, Monsanto and Solutia have denied any liability for the claims asserted by Plaintiffs.

WHEREAS, the trial of the case commenced on April 2, 2001, before the Honorable Inge Johnson, Judge, United States District Court for the Northern District of Alabama.

WHEREAS, the parties to this Agreement desire to resolve Plaintiffs' claims and avoid the further expense, delay and uncertainty of continuing the litigation through trial and possible appeals.

NOW, THEREFORE, in consideration of the above premises and the mutual promises contained in this Agreement, the adequacy and sufficiency of which is hereby acknowledged by the parties, Plaintiffs, Monsanto and Solutia hereby promise and agree as follows:

1) <u>Subject To Court Approval.</u> This Agreement is subject to approval of the Honorable Inge Johnson, Judge, United States District Court for the Northern District of Alabama, (or such other judge who might replace her as the assigned District Court judge handling this action), as to the settlement of the claims of the Plaintiffs who are minors and who are asserting their claims by and through their next friends and guardians, as set forth in paragraph 6 below. In the event the Court does not approve of the settlement for the Plaintiffs who are minors, then this Agreement is null and void.

2) <u>Payment Of Settlement Amount.</u> Monsanto/Solutia shall wire transfer to an interest bearing escrow account designated by Plaintiffs' Counsel the following sums on the dates indicated:

a) On or before 2:00 p.m. EDT, May 1, 2001 the sum of twelve million

dollars ($12,000,000.00);

b)    On or before 2:00 p.m. EST, January 15, 2002, the sum of ten million dollars ($10,000,000.00); and

c)    On or before 2:00 p.m. EST, January 15, 2003, the remaining amount due from thirty-four million dollars ($34,000,000.00) less the payments set out in a) and b) above, which total twenty-two million dollars ($22,000,000.00), less the Minors' Payments as defined in paragraph 7, which are estimated to be approximately five million, five hundred thousand dollars ($5,500,000.00), plus interest at the rate of five percent, compounded annually, on any unpaid amounts, including unpaid interest, from May 1, 2001 until paid.

d)    In addition to the above payments, Monsanto/Solutia shall make certain other payments as set forth in paragraphs 4, 5, and 7 hereinafter.

e)    Included in the payment set forth in a) above is the sum of one million dollars ($1,000,000.00), which has been assessed as costs in the pending lawsuit.

3)    <u>No Distribution Until Conditions Met.</u> The funds paid into the escrow account under paragraph 2 above shall not be distributed until the following conditions have been met:

a)    The Court has approved of the settlement of the claims of the minors who are Plaintiffs as set forth in paragraph 6 below;

b)      The Court has entered an order dismissing Plaintiffs' claims with prejudice, as set forth in paragraph 8 below; and

c)      As to any individual adult plaintiff, there shall be no distribution until he or she has executed a release as required by paragraph 9 below.

.

4)      <u>West Anniston Community Foundation.</u>

a)      <u>Formation of Foundation.</u> The West Anniston Community Foundation (the "Foundation") shall be formed by Plaintiffs' counsel as a nonprofit corporation, foundation or other appropriate entity. It is the intent of the parties that the Foundation be constituted under any applicable law governing non-profit charitable organizations in order to qualify for tax-exempt treatment within the meaning of section 501(c) of the Internal Revenue Code. The Foundation shall be established for the following general purposes, and will have the authority to expend funds for such purposes but will not be required to perform every such purpose:

1)      To provide primary health care and/or to assist in gaining access to primary health care and other health care services (including but not limited to lab, dental, outreach, prenatal care, radiology, case management, pharmacy, preventive medicine, holistic medicine and other health programs) to the economically and socially disadvantaged current and former residents of the West Anniston area of Anniston, Alabama who may have been exposed to the discharge

of PCBs into the environment.  The Foundation may make grants or payments for the actual benefit of such residents meeting The Foundation's criteria, or, in the sole discretion of the Board of The Foundation, to local clinics or other health care providers to support the provision of health care services and/or related services, such as transportation, to such residents;

2)      To provide educational grants, scholarships, or loans to such residents and their families and/or to schools or other educational institutions or providers for the actual benefit of such residents for such educational services as the Board of Directors of the Foundation, in its sole discretion, may deem necessary or appropriate, including but not limited to the evaluation of and development of personal education plans, pre-kindergarten program participation, after-school program participation, one-on-one tutoring, participation in remedial programs in reading, mathematics and other basic disciplines, participation in individual enrichment programs, computer training programs, SAT/ACT or other examination preparation programs, and participation in technical training, vocational, GED, or adult education programs;

3)      To provide health education and instruction to or on behalf of such residents; and

4)      To provide such other programs relating to health, education and

community welfare that would actually benefit such residents.

b)    <u>Funding of Foundation.</u>  Monsanto/Solutia shall make payments in connection with the establishment and operation of the Foundation as follows:

    1)    Monsanto/Solutia shall wire transfer to an escrow account designated by Plaintiffs' Counsel in the name of the Foundation the following amounts on the dates indicated:

        a)    On or before 2:00 p.m. EDT, May 1, 2001, the sum of two hundred fifty thousand dollars ($250,000.00);

        b)    On or before 2:00 p.m. EST, January 15, 2002, the sum of three hundred fifty thousand dollars ($350,000.00);

        c)    On or before 2 p.m. EST, January 15, 2003, the sum of four hundred thousand dollars ($400,000.00);

        d)    On or before 2:00 p.m. EST, January 15, 2004, the sum of one million dollars ($1,000,000.00); and

        e)    On or before 2:00 p.m. EST, January 15, 2005 the sum of one million five hundred thousand dollars ($1,500,000.00), plus interest at the rate of five percent, compounded annually, on any unpaid amounts, which would include the payments set out in

Page 6

b), c), d), and e) plus unpaid interest earned on those payments, from May 1, 2001 until paid.

2)     Once the conditions set forth in paragraphs 3(a) and (b) above have been met and the Foundation has been established as set forth in this paragraph, Plaintiffs' Counsel shall promptly transfer the above-referenced payments less attorneys' fees in the amount of forty percent of each such payment, in accordance with the contingent fee contract with plaintiffs, from the escrow account to a designated account of the Foundation.   Plaintiffs' counsel shall be authorized to pay attorneys' fees at the same time the funds are transferred to the Foundation account, as set forth above.  For each payment after the initial payment, the payment to the Foundation and the payment of attorneys' fees shall be made by plaintiffs' counsel within fifteen (15) days after each such payment is made to the escrow account.

5)     <u>Relocation/Property Adjustment.</u>  Once the conditions set forth in paragraphs 3(a) and (b) have been met, Monsanto/Solutia shall pay two million five hundred thousand dollars ($2,500,000.00) for relocation/property adjustment of certain plaintiff property owners and residents as follows:

a)     One million dollars ($1,000,000.00) for attorneys' fees shall be paid to Plaintiffs' Counsel as follows:

1)   On or before 2 :00 p.m. EDT, May 1, 2001, the sum of four hundred thousand dollars ($400,000.00) shall be wired transferred to Plaintiffs' Counsel;

2)   On or before 2:00 p.m. EST, January 15, 2002, the sum of four hundred thousand dollars ($400,000.00) shall be wire transferred to Plaintiffs' Counsel; and

3)   On or before 2:00 p.m. EST, January 15, 2003, two hundred thousand dollars ($200,000.00) shall be wire transferred to Plaintiffs' Counsel, plus interest at the rate of five percent, compounded annually on any unpaid amounts, including unpaid interest, from May 1, 2001 until paid..

b)   The remaining one million, five hundred thousand dollars ($1,500,000.00) shall be paid in such sums as set forth hereinafter to certain plaintiff property owners and residents for relocation/property adjustment in the areas described in Exhibits A and B.  The relocation/property adjustment funds shall be used for the purchase of properties identified in paragraph 5)e), the payment of monies to certain plaintiff property owners in accordance with paragraph 5) g) and Exhibit E, and the purposes described in paragraph 5)i).

c)   For individual plaintiff owners whose properties are within areas designated for property purchase/relocation under paragraph 5)d) hereof, individual payments to individual plaintiff owners and residents shall be made, without adjustment for net present value, at the closing of each transaction by

Monsanto/Solutia with each such owner and resident in accordance with Exhibit E. For individual owners who elect not to participate in a property purchase/relocation program for which they are eligible, the payments set forth in Exhibit E shall be made within 30 days of Monsanto/Solutia's receipt of written notice that such individual plaintiff owner does not wish to participate in said property purchase/relocation program.

d)   Monsanto/Solutia shall bear all administrative, legal (excluding fees and expenses for Plaintiffs' Counsel other than as specified in this Agreement), appraisal, and other costs of the Lincoln Park and 11th /12th Street relocation/property adjustment program, but the administration of such program shall include the participation of Plaintiffs by and through their representatives and Plaintiffs' Counsel consistent with the provisions of this paragraph and the applicable exhibits to this Agreement.

e)   Relocation/property adjustment payments shall first be made for eligible plaintiff participants who own residential property in, or are residents of, the Lincoln Park area [bounded by Montrose Avenue to the West, Highway 202 to the South, Brockman Avenue to the East, and West 10th Street to the North] and eligible plaintiff participants who own residential property in, or are residents of, the confluence area of Snow Creek and the 11th Street Ditch [including the residential properties in the 1200 Blocks of West 12th and West 11th Streets, the 1100 Block of McDaniel, and the 1100 Block of Brown, but excluding any public housing project] and the purchase of any remaining

Page 9

business property owned by an eligible plaintiff participant and located in the original October 1995 Property Purchase Program area [Exhibit C]. In the Lincoln Park and 11th/12th Street area, relocation/property adjustment payments shall be consistent with Monsanto's October 1995 Property Purchase Program [Exhibit D], as modified by the provisions of Exhibit E.

f)      It is anticipated that the property purchase/relocation program under paragraph 5)e) will be completed by January 15, 2003 with approximately six hundred thousand dollars ($600,000.00) expended for the program in the calendar year 2001, and an additional six hundred thousand dollars ($600,000.00) expended on the program in the calendar year 2002 or the funds shall be transferred pursuant to g) below. On or before January 15, 2002 Monsanto/Solutia shall report to Plaintiffs' Counsel the amounts expended under this paragraph 5) during the calendar year 2001, and on or before January 15, 2003, Monsanto/Solutia shall report to Plaintiffs' Counsel the amounts expended under this paragraph 5) during the calendar year 2002.

g)      The remainder of the said $1.5 million amount, if any, will be paid by Monsanto/Solutia to an escrow account designated by Plaintiffs' Counsel (the "Relocation/Property Adjustment Fund") at the earlier of the completion of the Lincoln Park and 11th/12th Street relocation/property adjustment program or January 15, 2003. After the completion of the Lincoln Park and the 11th/12th Street relocation property adjustment or January 1, 2003, whichever is earlier, any funds that remain available after completion of the payments

to eligible plaintiff property owners and residents in the Lincoln Park and the 11th/12th Street relocation/property adjustment areas and the payment to any eligible plaintiff owner for the purchase of business property located in the original October 1995 Property Purchase Program area shall be paid to eligible plaintiffs in accordance with the provisions of Exhibit E.

h)    None of the funds paid under this paragraph shall be used for general remediation purposes or projects or to pay for relocation/remediation expenses that Solutia is already obligated to pay under the AOC with EPA.

i)    To the extent that  any of the amount paid by Monsanto/Solutia under this paragraph remains after the date of the completion of all of the payments to be made for relocation/property adjustment under the provisions of this paragraph or April 15, 2003, whichever is later, such remaining amount shall be deposited by Plaintiffs' Counsel in a designated account of The Foundation to be used for the purposes of The Foundation as set forth in paragraph 4 above.

6)    Court Approval Of Minors' Settlement.    Plaintiffs and Monsanto/Solutia have jointly filed a motion for approval of the settlement of the minors' claims, along with a proposed order. The Court held a hearing on April 25, 2001 and approved the settlement of the minors' claims.   Attached hereto as Exhibit F is a copy of the judgment and order entered by the Court approving the settlement of the minors' claims. The minors shall be required to sign a satisfaction of judgment in the form of Exhibit G attached hereto when each minor is given his or her final payment.

7)    Payments to Minors.  Monsanto/Solutia shall pay to an escrow account designated by the Guardian Ad  Litem the "designated share" for each minor plaintiff, plus interest as set forth below, on or before the twenty-first day of the month preceding the month during which such minor plaintiff shall reach his or her nineteenth birthday.  Interest shall be paid on each "designated share" at the prime rate, as reported in the *Wall Street Journal* on first business day in January of each year, minus three percentage points, but the rate shall not be less than five percent.  Interest shall be compounded annually and paid from May 1, 2001 until paid into the escrow account.  The "designated share" for each minor plaintiff is set out in Exhibit H attached hereto.  The total amount of the designated shares, exclusive of interest,  is referred to in paragraph 2 above as "the Minors' Payments" and is estimated to be approximately five million, five hundred thousand dollars ($5,500,000.00), but may be more or less than that amount.  The attorneys' fees due for such payments under the contingent fee contracts are included in the payments set out in paragraph 2 above.

8)    Dismissal With Prejudice.  Within ten days of the execution of this  Agreement, Plaintiffs and  Monsanto/Solutia shall jointly file a motion for dismissal with prejudice of this lawsuit, along with a proposed order (conditional upon Court approval of the minors' settlement as set forth above) based upon the approval of the settlement set forth in this Agreement by Plaintiffs in accordance with the procedures agreed to by each adult plaintiff in a Litigation Management Agreement entered into by and between all of the Plaintiffs.  The order shall provide that the Court retains

continuing jurisdiction in the pending litigation for the purpose of enforcing this Settlement Agreement and in the event Monsanto/Solutia fails to make the required payments the Court may enter a judgment for all unpaid amounts against Monsanto. Attached hereto as Exhibit I is a copy of the joint motion and proposed order. The parties further agree to cooperate and work jointly to present evidence in support of this motion at any hearing scheduled by the Court on the motion.

9)     Releases. Each adult plaintiff, as a condition of receiving his or her distribution of settlement proceeds, shall be required to sign a release of all claims in the form of the release document attached hereto as Exhibit J. If an adult plaintiff fails to sign the required release within four months of the scheduled distribution, Plaintiffs' Counsel shall pay from the escrow account such plaintiff's share, less his or her proportionate share of attorneys' fees and expenses, into the registry of the Court to be held for further order of the Court. If any such funds remain in the registry of the Court on January 31, 2004, the parties will file a joint motion with the Court requesting that the Court enter an order directing that such funds be paid to the Foundation to be used for the Foundation purposes set forth in paragraph 4 above.

10)    Distribution Of Funds. Once the conditions of paragraph 3 above have been met, Plaintiffs' Counsel shall promptly distribute the following from the escrow account referenced in paragraph 2 above:

    a)     To each individual adult plaintiff who has signed the required release, his or her share of the settlement funds in that escrow account, less attorneys' fees and expenses. In some cases, such payments will be made to a special needs

trust instead of directly to the plaintiff.

b)    To Plaintiffs' Counsel, attorneys' fees and expenses in accordance with the contingent fee contracts with Plaintiffs and the agreement among counsel for division of fees, including the attorneys' fees in connection with the future payments to minors.

11)    <u>Most Favored Nation Clause.</u>  Monsanto/Solutia agree that if they enter into any future settlement of all or part of a multi-plaintiff PCB/Anniston plant-related lawsuit pending as of the date of this Agreement [or, as to a multi-plaintiff PCB/Anniston-related lawsuit filed after the date of this Agreement, if they enter into a settlement agreement within thirty-six months of the date of this Agreement], the terms of any such future settlement shall be compared to the terms of this Agreement based solely upon the net present value of the per capita gross cash recovery per settling plaintiff. For the purposes of this paragraph, the following definitions apply:

•    "Monsanto and Solutia" or "Monsanto/Solutia" includes either or both companies and any of their related or successor companies;

•    "Multi-plaintiff PCB/Anniston plant-related lawsuit" means a civil action filed in any state or federal court involving the claims of more than 50 individual plaintiffs who allege personal injuries or property damage or both arising out of alleged exposure (including *in utero* exposure) of such plaintiffs to polychlorinated biphenyls and/or other allegedly toxic or hazardous substances from Monsanto/Solutia's Anniston plant or the presence of PCBs from Monsanto/Solutia's Anniston plant on property owned or occupied by such plaintiffs, but excludes the consolidated cases styled

Page 14

Thomas C. Dyer, et al. v. Monsanto Company, et al., Civil Action No. CV-93-250, and Shelter Cove Management, Inc., et al. v. Monsanto Company, et al., Civil Action No. CV-94-50-PH;

- "Per capita gross cash recovery" means the net present value as of the date of the future settlement agreement of the total amount of money Monsanto/Solutia is required to pay directly to named plaintiffs under the terms of said future settlement agreement divided by the total number of named plaintiffs in the lawsuit being settled. (If the other lawsuit is a class action, the total number of class members remaining after opt-outs shall be used instead of the total number of named plaintiffs). For example, the parties agree that the net present value of the per capita gross cash recovery per settling named plaintiff under the terms of this Agreement is equal to $33,000,000 ÷ 1596 = $20,676.69.

In the event Monsanto /Solutia enter into a settlement agreement after the date of this Agreement in another multi-plaintiff PCB/Anniston plant-related lawsuit that is subject to this paragraph and that results in a net present value of the per capita gross cash recovery that exceeds $20,676.69, then Monsanto /Solutia shall make such additional payments under the terms of this paragraph as may be necessary to make the net present value of the per capita gross cash recovery in this lawsuit equal to the net present value of the per capita gross cash recovery in such other settlement. Such payment shall be made payable to the trust account of one of the law firms representing the Plaintiffs in this lawsuit and shall be paid within thirty (30) days of the payment date when payment is made under such future settlement agreement or,

Page 15

if such future settlement agreement establishes a schedule for the payments covered by this paragraph, then payment to Plaintiffs under this paragraph shall be made within 30 days of each payment date under such future settlement agreement beginning with the payment date on which the sum of such payments under the future settlement agreement on a per capita gross recovery basis exceeds the per capita gross recovery per settling plaintiff under this Agreement. If Monsanto/Solutia contests or fails or refuses to make a payment under the provisions of this paragraph when it is due, Monsanto/Solutia shall pay interest on the past due amount at the prime rate reported in the *Wall Street Journal* on the due date of that payment, such interest running from the due date of that payment until the date of payment of the amount due.

Monsanto and Solutia warrant and represent that they have not entered into any other settlements of multi-plaintiff PCB/Anniston plant-related lawsuits subject to the terms of this paragraph as of the date of this Agreement. Monsanto/Solutia agree that they will disclose to Plaintiffs' Counsel any settlement that is subject to the terms of this paragraph within five (5) days of the final execution of such settlement agreement by the parties to such settlement agreement.

12)   No Representations And Warranties; Entire Agreement.   The parties make no representations or warranties of any kind to each other except as specifically set out in this Agreement. This Agreement supersedes all prior discussions and agreements between the parties with respect to any settlement of the litigation, and this Agreement and the attached Exhibits contain the sole and entire agreement between

the parties with respect to the settlement of Plaintiffs' claims.  This Agreement shall not be modified or amended except by an instrument in writing signed by or on behalf of the parties hereto.

13)    Past Medical Expenses; Punitive Damages.  Plaintiffs acknowledge that no part of the settlement proceeds is  for recovery of past medical expenses or punitive damages, and the parties  agree that none of the settlement proceeds compensate or reimburse Plaintiffs for any medical expenses already incurred and paid by Plaintiffs or paid or reimbursed by any insurance company, any governmental agency or other person or entity on behalf of Plaintiffs.  The parties further agree that Plaintiffs have not been fully compensated for all of the actual damages, expenses and losses  they claim and that the payment of the sums specified herein does not equal or exceed the sum of all economic and non-economic losses they claim they have incurred.  The parties further agree that  nothing in this paragraph is intended, or should be construed or interpreted, to be contrary to the terms or effect of the  dismissal with prejudice of this lawsuit or the releases executed by Plaintiffs as set forth in paragraphs 7 and 9 above.

14)    Disputed Claims.  It is understood and agreed by Plaintiffs that this Agreement is a compromise of disputed claims, and neither the Agreement, the consideration, nor any discussions regarding this  Agreement shall constitute an admission of liability or wrongdoing on the part of Monsanto or Solutia.  It is expressly acknowledged by Plaintiffs that Monsanto and Solutia deny any liability or wrongdoing whatsoever.

15)    Governing Law.  This  Agreement shall be governed by, construed, interpreted and

Page 17

enforced in accordance with the laws of the State of Alabama.

16) <u>Authority.</u>  Plaintiffs, by and through their counsel of record, represent and warrant that Plaintiffs' Counsel have express authority pursuant to, and in compliance with, the terms of the Litigation Management Agreement among the Plaintiffs to enter into this Agreement.  Monsanto and Solutia, by and through their undersigned representatives and counsel, represent and warrant that their representatives and counsel have express authority, pursuant to their respective Articles of Incorporation, By-Laws, Board of Directors' resolutions, or other governing corporate policy or procedure, to enter into this Agreement on behalf of Monsanto and Solutia.

17) <u>Successors.</u> This Agreement shall apply to , be binding upon, and inure to the benefit of all of the Plaintiffs, Monsanto, and Solutia, as well as their respective heirs, legal representatives, successors in interest and assigns.

18) <u>Expenses.</u>  All parties shall bear their own expenses of litigation and attorneys' fees which have arisen or will arise in connection with the litigation, this Agreement, or any other matters or documents related thereto, except as otherwise provided herein.

19) <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall comprise a single instrument.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed on this the _____ day of _____, 2001.

MONSANTO COMPANY

By: _____

Its: _____

Subscribed and Sworn to before me this _____ day of _____, 2001.

_____
Notary Public


SOLUTIA INC.

By: _____

Its: _____

Subscribed and Sworn to before me this _____ day of _____, 2001.

_____
Notary Public


By Plaintiffs' Counsel:                                          By Defendant's Counsel:

_____              _____
Grover Hankins, Esquire                                     Lightfoot, Franklin & White, L.L.C.

_____
MITHOFF & JACKS

_____
DOFFERMYRE, SHIELDS, CANFIELD
& KNOWLES

Page 19